Filed 4/5/23  P. v. Trejo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>JOHNNY JULIAN TREJO,<br><br>    Defendant and Appellant. | G062208<br><br>(Super. Ct. No. 99NF0024)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Jonathan S. Fish.  Affirmed.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Johnny Julian Trejo on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against his client but advised the court he found no issues to argue on his behalf.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)

Counsel did not provide the court with information as to any specific issue that might arguably support an appeal pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*). Counsel only asked that this court independently review the record in accordance with *Wende*.

We gave Johnny[1] 30 days to file written argument on his own behalf, and he did. In his supplemental brief, Johnny argues the case must be remanded to consider recent legislation enacting Penal Code section 1170.03[2] and amending section 186.22. These issues were not raised in the trial court.

We invited Johnny and the Attorney General (AG) to file a supplemental brief addressing *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Both Johnny and the AG note Johnny was never notified his appeal could be dismissed as abandoned if no supplemental brief was received. (*Id.* at pp. 231-232.) The AG requests this court

---

[1] Some of the individuals in this case share family names. To avoid confusion, we use first names.

[2] All further statutory references are to the Penal Code.

issue new no-merits orders that comply with the procedures set forth in *Delgadillo*. Johnny agrees if this court does not independently review the record.

We have independently reviewed the record and found no arguable issues on appeal. We affirm the postjudgment order.

FACTS

A detailed recitation of the facts is provided in our prior nonpublished opinion *People v. Trejo et al.* (Dec. 17, 2003, G028757) (*Trejo*). A brief recitation will suffice, which Johnny concedes are accurate.

Johnny and Rachel Seelke were dating. Rachel knew Johnny and Benito Trejo were members of the Atwood Street (AS) gang, and Edmundo Juarez was a member of the Cambridge Street (CS) gang. Johnny invited Rachel to a New Year's Eve party hosted by his gang's members, and asked her to bring her sister, Judah Seelke, and her friends, including Veronica Manzo. (*Trejo, supra,* G028757.)

The girls drove two different cars to the street where the party was to be held. Johnny had told Rachel the street but failed to tell her the house number. Veronica drove Judah in one car while Melissa Meade drove Rachel and Paula Gano. (*Trejo, supra,* G028757.)

That night, Veronica, who had a shaved head, wore overalls and a checkered shirt over a white T-shirt. She slowly drove down the street looking for the party, made a U-turn, spoke to Rachel in the other car, and returned to the same block searching for parking. Veronica saw several men in baggy clothing running after her car—three of them had guns in their hands, including Johnny. As Johnny rapidly gained on her car, Veronica accelerated. The men shot at Veronica's car hitting it numerous times. (*Trejo, supra,* G028757.)

From a distance, Rachel and Paula saw Johnny and Juarez running towards Veronica's car carrying guns. Paula also saw Steven Fernandez, a known AS gang member, sitting on a fence. He whistled when Veronica's car drove past his location.

3

Immediately after he whistled, the men in baggy clothing gave chase and started shooting at the car. (*Trejo, supra,* G028757.)

When Veronica accelerated, another group of men emerged and began firing at her car. Rachel recognized Benito as one of the gunmen. Rachel jumped out of her car and yelled at Johnny that they were shooting at her sister. Johnny was surprised because he thought it was rival gang members. (*Trejo, supra,* G028757.)

When Veronica was safe, she noticed her arm was bloody and bruised. She saw Judah was slumped over motionless in her seat. She touched Judah's head and discovered blood on her hand. Judah died of a single gunshot wound to the back of her head from a bullet of either a .40-caliber or 10-millimeter size. (*Trejo, supra,* G028757.)

AS gang member Maurice Henao told the police that when Fernandez warned "vatos" were cruising the street, Johnny suggested they stop the apparent rivals' cars by shooting at them from the street. After his arrest, Johnny told the detectives various stories regarding the night's events ranging from lack of knowledge of the shooting to shooting twice at the car. (*Trejo, supra,* G028757.)

Juarez also talked with the police after his arrest. Like Johnny, Juarez told the detectives various stories regarding the night's events ranging from lack of knowledge of the shooting to shooting a .38-caliber handgun about six times *over* the car. (*Trejo, supra,* G028757.)

Benito told the police he arrived at the party after the shooting, but other witnesses said Benito was at the party from the very start. Ronnie David Cruz told the detectives various stories regarding the night's events ranging from he was with his girlfriend to firing a single shotgun blast into the air as the suspect vehicle passed his location. (*Trejo, supra,* G028757.)

In 2001, as relevant here, a jury convicted Johnny of first degree murder (§ 187, subd. (a); count 1) and deliberate and premediated attempted murder (§§ 664, 187, subd. (a); count 2). As counts 1 and 2, the jury found Johnny personally discharged

4

a firearm (§ 12022.53, subd. (c)) and vicariously discharged a firearm (§ 12022.53, subd. (e)(1)). We affirmed. (*Trejo, supra,* G028757.)

In 2019, Johnny filed a petition for resentencing pursuant to section 1170.95.[3] The trial court denied the petition on the sole ground that Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (SB 1437) was unconstitutional. We reversed. (*People v. Trejo* (June 8, 2020, G057914) [nonpub. opn.].)

On remand, Johnny filed a brief in support of his petition for resentencing pursuant to section 1172.6. He alleged the jury likely convicted him of first degree murder and attempted murder based on the now abolished natural and probable consequences doctrine.

The trial court ruled Johnny's petition set forth a prima facie case for relief and issued an order to show cause. The court heard evidence and argument.

The trial court denied the petition in a written ruling. The court issued an amended written ruling again denying the petition. The court ruled the evidence established Johnny, Benito, and Cruz responded to a perceived gang threat and responded as gang members. The court further found they were part of a machine that acted in concert to kill, although without knowing the victims' identities. The court opined that although the fatal shooter was unknown, Johnny, Benito, and Cruz aided and abetted in a classic sense with a shared intent to kill. The court reasoned their response to the warning about rivals, the immediate forming of groups to shoot at the car from two different spots, and the sheer volume of shots fired demonstrated premeditation and deliberation. The court concluded, "The court finds beyond a reasonable doubt that [Judah] was murdered with premeditation and deliberation and that all three petitioners aided and abetted in the murder of [Judah] as members of the mass that mobbed and shot

---

[3] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. For clarity, we refer to the statute as section 1172.6 throughout the opinion.

at the car and enabled the killing. The court finds beyond a reasonable doubt that all three petitioners had the specific intent to aid and abet and had the specific intent to kill [Judah]. The court also finds beyond a reasonable doubt that all three petitioners after premeditation and deliberation and with specific intent to kill did attempt to kill [Veronica]." Johnny filed a timely motion of appeal.

DISCUSSION

In *Delgadillo, supra,* 14 Cal.5th 216, our Supreme Court held the procedures in *Wende* and *Anders* do not apply to appeals from the denial of postconviction relief under section 1172.6. The court instructed that on appeal from an order denying section 1172.6 relief, a counsel who finds no arguable issue should file a brief informing the appellate court of that determination and include a concise factual recitation. (*Id*. at p. 231.) The appellate court shall send a copy of the brief to the defendant informing the defendant of the right to file a supplemental brief and that if one is not filed within 30 days, the court may dismiss the matter. (*Id*. at pp. 231-232.) If a supplemental brief is filed, we must evaluate the contentions in it. (*Id*. at p. 232.) If a supplemental brief is not filed, we may dismiss the appeal as abandoned without a written opinion. (*Ibid*.) However, we retain discretion to independently review the record. (*Ibid*.) We exercise our discretion to independently review the record.

We did not provide Johnny the notice required by *Delgadillo* as our order predated *Delgadillo*. But because we exercise our discretion to independently review the record, there is no need to advise Johnny of the possibility of dismissal.

SB 1437 amended sections 188 and 189, effective January 1, 2019, to eliminate natural and probable consequences liability for murder, and to limit the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*).) Under sections 188 and 189, as amended, murder liability can no longer be "imposed on a person who [was] not the actual killer," who "did not act with the intent to kill," or who "was not a major participant in the underlying felony who acted with reckless

6

indifference to human life." (*Lewis*, *supra*, 11 Cal.5th at p. 959.) SB 1437 also added section 1172.6 which, as originally enacted, set forth a procedure whereby a "person convicted of felony murder or murder under a natural and probable consequences doctrine or other theory" could petition for resentencing relief. (§ 1172.6, subd. (a).)

Senate Bill No. 775 (2021-202 Reg. Sess.) (SB 775), effective January 1, 2022, amended section 1172.6, subdivision (a), to expand the individuals entitled to petition for resentencing. (Stats. 2021, ch. 551, § 1, subd. (a).) Subdivision (a), of that section now expressly permits individuals convicted of attempted murder or manslaughter under a natural and probable consequences theory to file a petition for resentencing relief. A section 1172.6 petition is required to make "'a prima facie showing' for relief. [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 960.) In *Lewis, supra*, 11 Cal.5th at page 971, our Supreme Court held "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."

Johnny stands convicted of both murder and attempted murder, and under current law, he is entitled to petition for resentencing, which he did. There is no question he made a prima facie showing for relief and the trial court appointed counsel. It is also not disputed the court instructed the jury on the natural and probable consequences doctrine. After the filing of the petition for resentencing, the court issued an order to show cause, allowed briefing by all parties, and held an evidentiary hearing. The only issue before us is whether the court properly denied the petition on the merits.

Section 1172.6, subdivision (d)(3), provides the burden of proof shall be on the prosecution to prove beyond a reasonable doubt the petitioner is ineligible for resentencing. To sustain its burden, the prosecution may rely on the record of conviction or offer new or additional evidence and the judge must determine whether the prosecution has sustained its burden of proof. (*Ibid*.)

7

Here, the trial court held the prosecution to the proper standard of proof and found beyond a reasonable doubt Judah was murdered with premeditation and deliberation and that all three petitioners aided and abetted in her murder. The court concluded beyond a reasonable doubt that all three petitioners had the specific intent to aid and abet and had the specific intent to kill Judah. The court also found beyond a reasonable doubt that all three petitioners, after premeditation and deliberation and with specific intent to kill, did attempt to kill Veronica.

Although the trial court independently determines whether the prosecution met its burden to establish a defendant is not entitled to resentencing under section 1172.6, we review the court's findings for substantial evidence. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "Under this familiar standard, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citations.] Substantial evidence also "'includes circumstantial evidence and any reasonable inferences drawn from that evidence."' [Citations.]" (*Ibid.*)

The trial court acted as an independent fact-finder to determine Johnny's eligibility for relief. The court made its factual finding based on the record of conviction applying the proper standard and found Johnny was ineligible for relief. This finding was supported by substantial evidence.

The facts as to Johnny's involvement in the killing render him ineligible for relief under section 1172.6. Relief requires a finding the petitioner was not the actual

8

killer. The actual killer remains unknown, but the petitioner must also show he did not act with the intent to kill and that he was not a major participant in the underlying felony who acted with reckless indifference to human life. Johnny cannot satisfy either of those requirements.

Johnny was identified as one of the men running towards Veronica's car with a gun. Rachel told Johnny they were shooting at her sister, and Johnny admitted he thought the car was full of rival gang members. Henao, an AS gang member, told the police that, upon Fernandez's warning that "vatos" were cruising the street, Johnny was the one who suggested to others at the party that they stop the apparent rivals' cars by shooting at them. Although Johnny gave various conflicting accounts of his involvement, he ultimately admitted he fired twice at the car and admitted his were the first shots. These facts demonstrate Johnny was not only a major participant, he was the ringleader. Based on these facts, it cannot be said Johnny acted without the intent to kill and was not a major participant in either crime. We find the trial court's ruling is supported by substantial evidence.

The issues Johnny raised for the first time in his supplemental brief are not properly before the court. In order for an appellate court to make a determination of whether the trial court erred, there must be a record that demonstrates what the trial court's decision-making process was in reaching its conclusion. In cases such as this, where the issues were not raised in the trial court, we are left without any ability to evaluate the trial court's decision. (*People v. Nelson* (2011) 51 Cal.4th 198, 227.) Neither of the statutory changes were raised in the trial court. Therefore, we do not address these claims.

We have reviewed the record pursuant to *Wende, supra*, 25 Cal.3d 436, and *Anders, supra*, 386 U.S. 738. We found no arguable issues on appeal.

9

DISPOSITION

The postjudgment order is affirmed.


                                       O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.